T.C. Summary Opinion 2006-47


UNITED STATES TAX COURT


DAVID M. SEARS AND CAROL L. McCABE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7980-04S.              Filed April 3, 2006.


David M. Sears and Carol L. McCabe, pro sese.

<u>Daniel J. Parent</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal

Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' 2000 Federal income tax of $2,115. After concessions by the parties,[1] the issues for decision are: (1) Whether petitioner David Sears's sales activity was engaged in for profit, and (2) if the activity was engaged in for profit, to what extent petitioners have substantiated the expense deductions claimed on their Schedule C, Profit or Loss From Business.[2]

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. Petitioners are married and resided in Oroville, California, at the time they filed their petition.

---

[1] Petitioners concede the following Schedule C, Profit or Loss From Business, expenses: $100 of commissions and fees expense, $1,322 of employee benefit programs expense, $31 of other interest expense, and $12 of taxes and licenses expense. They also concede that petitioner David Sears received $768 of nonemployee compensation. Respondent concedes that petitioners paid $10,149 of home mortgage interest and $1,115 of real estate taxes.

[2] Petitioners now claim additional expense deductions beyond those claimed on their Schedule C. Based on our resolution of the first issue in this case, infra, we need not address whether they are entitled to deduct additional Schedule C expenses. Respondent also adjusted petitioners' Schedule A, Itemized Deductions, for mortgage interest paid and property taxes paid. These adjustments are computational; therefore, we need not address them.

In 1999, petitioners became associated with Renaissance, The Tax People, Inc. (RTP), also known as Advantage International Marketing.  RTP sold a product called "The Tax Relief System" (the system), which was designed to generate Federal income tax deductions.  RTP claimed that by establishing a "home-based business" activity, a taxpayer could convert personal expenses into business expenses.  The system consisted of various written materials that RTP sold for $400.  RTP promised to refund the purchase price if a taxpayer failed to generate at least $5,000 of Federal income tax deductions during the first 12 months of using the system.

RTP also sold a related service called "Platinum Tax Advantage" (the platinum service)[3] that was available to customers who purchased the system.  For $100 a month, platinum service members could contact RTP and receive tax and financial planning advice.  RTP also claimed it would prepare customers' tax returns and represent them before the Internal Revenue Service (IRS) in the case of an audit.

RTP sold the system and the platinum service by means of "multi-level marketing" or "network marketing".  A "downline" distributor was recruited by an "upline" distributor.  An upline distributor earned a $30 commission for every sale he made of the system and an additional $3 commission for each month a downline

---

[3]  The parties also referred to the platinum service as "Prepaid Tax Advantage."

distributor purchased the platinum service.[4]  Thus, if an upline distributor sold the system and a year's subscription to the platinum service, he earned commissions totaling $66.  An upline distributor also earned commissions based on a downline distributor's sales and on the downline distributor's success in developing his own downline distribution network.  See Elliott v. Commissioner, 90 T.C. 960 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990), for a general discussion of multi-level marketing.

Petitioner David Sears (Mr. Sears) was recruited as a downline distributor in August 1999.  He also purchased the platinum service, which he maintained until he discontinued his involvement with RTP in 2001.[5]  To generate sales and recruit downline distributors of his own, he frequently went to coffee shops or doughnut shops and initiated conversations with other patrons about taxes.  Mr. Sears would mention the RTP system "as an alternative to just complaining" about taxes.  He also invited acquaintances to dinner to discuss the system.  During this time,

---

[4]  The upline distributor did not provide the tax advice and other services to downline distributors.  RTP provided such services directly.

[5]  Petitioner Carol McCabe (Ms. McCabe) also purchased the system and the platinum service; however, petitioners do not claim that Ms. McCabe's RTP activity was a trade or business for Federal income tax purposes.  They testified that only one person was covered by the $100 platinum service fee.  Thus, in order for Ms. McCabe to receive tax and financial planning advice of her own, she had to purchase separately the system and the platinum service.

Mr. Sears maintained a full-time job at a computer software company, where he earned $46,081.60 in the taxable year 2000.

Following one of the tax-reduction strategies advocated by RTP, Mr. Sears established a "Medical Expense Reimbursement Plan" (the reimbursement plan) to cover employees of his RTP activity. He testified that petitioner Carol McCabe (Ms. McCabe) became an employee of the activity in April 2000 and elected to participate in the reimbursement plan. The record does not indicate what duties Ms. McCabe performed, but Mr. Sears testified she worked 2 hours a week for $6 an hour. Mr. Sears filed Forms 941, Employer's Quarterly Federal Tax Return, for the second, third, and fourth quarters of 2000, reporting total wages paid of $468. At least two of the Forms 941 were filed late.

Petitioners initially reported that Ms. McCabe incurred $2,777 of reimbursable medical costs. They deducted that amount as employee benefit programs expense on their Schedule C for the activity.[6] Petitioners later conceded, however, that $1,322 of those expenses were nondeductible because they were paid before Ms. McCabe became an employee. Mr. Sears also admitted that he did not make reimbursement payments to Ms. McCabe. Instead, Ms. McCabe paid her medical bills, and petitioners claimed a

6 Petitioners attached a second Schedule C to their joint 2000 Federal income tax return for a business described as "Consulting - Health care insurance" that Ms. McCabe operated. Respondent made no adjustments to this Schedule C, and it is not in dispute.

corresponding amount of employee benefit programs expense. Mr. Sears believed it was unnecessary to reimburse Ms. McCabe because "The money [to pay the medical bills] was coming from the same place." He described this practice as a "Poor job of accounting, maybe."

On October 25, 2000, a Kansas State court entered a Temporary Restraining Order (TRO) against RTP, its founder, and other related parties, enjoining them from marketing products and services to new customers and imposing restrictions on their business activities with existing customers. The court found that RTP and the other defendants "committed numerous acts which are deceptive and unconscionable acts and practices" in violation of the Kansas Consumer Protection Act, sec. 50-683 (1994). The court later permanently enjoined the defendants from conducting any business activity in or from the State of Kansas.

Petitioners continued to use the RTP system and purchase the platinum service after learning of the TRO, but they did not attempt to recruit new downline distributors. Petitioners believed that RTP was a legitimate business, although Mr. Sears acknowledged "there were some things going on that were not good

* * * apparently even illegal things going on by some of the people who were connected with the company."[7]

Petitioners filed their joint 2000 Federal income tax return on or about August 13, 2001.  They reported gross income of $2,713 and expenses of $17,464 from the RTP activity, for a loss of $14,751.  Petitioners did not have RTP prepare the return, according to Mr. Sears, because RTP had been "shut down" before that time.

Respondent determined that the RTP activity was not a trade or business for Federal income tax purposes because it was not engaged in for profit.  Respondent disallowed petitioners' claimed expense deductions, except to the extent of gross income from the activity.  As an alternative position, respondent disallowed certain claimed expense deductions for lack of substantiation.

## Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing that the determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Pursuant to section 7491, the burden of proof as to factual matters shifts

---

[7] The stipulation of facts states that three people pleaded guilty to crimes related to their involvement with RTP.  The crimes include conspiracy to commit mail and wire fraud; assisting, counseling, and advising in the preparation of a false and fraudulent tax return; and defrauding the IRS.

to respondent under certain circumstances.  Petitioners have neither alleged that section 7491(a) applies nor established their compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests.  Petitioners therefore bear the burden of proof.

Section 162 provides that a taxpayer who is carrying on a "trade or business" may deduct ordinary and necessary expenses incurred in connection with the operation of the business.  To be engaged in a trade or business within the meaning of section 162, "the taxpayer's primary purpose for engaging in the activity must be for income or profit."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  Profit means economic profit, independent of tax savings.  Surloff v. Commissioner, 81 T.C. 210, 233 (1983).  If the taxpayer is not engaged in a trade or business under section 162, the taxpayer generally may deduct the expenses related to an activity "not engaged in for profit" only to the extent of the gross income derived from the activity for the taxable year. Sec. 183(a) and (b)(2); Elliott v. Commissioner, 90 T.C. at 973.

We consider all of the facts and circumstances in deciding whether a taxpayer entered into the activity for a profit, placing greater weight upon objective facts than the taxpayer's statements of intent.  Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The following nine nonexclusive factors are relevant in making

our decision: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.

Not all of the factors listed above are applicable to the facts of this case. We focus on only those factors that are relevant.

1. <u>The Manner in Which the Taxpayer Carries On the Activity</u>

The fact that the taxpayer carries on the activity in a businesslike manner may indicate that the activity is engaged in for profit. <u>Elliott v. Commissioner</u>, <u>supra</u> at 972; <u>Engdahl v. Commissioner</u>, 72 T.C. 659, 666 (1979); sec. 1.183-2(b)(1), Income Tax Regs. Relevant indicators include maintaining complete and accurate books and records, obtaining a business license, maintaining a separate business bank account, developing a written business plan, having a plausible strategy for earning a profit, and attempting changes in order to improve profitability. See <u>Morley v. Commissioner</u>, T.C. Memo. 1998-312; <u>Holowinski v.</u>

Commissioner, T.C. Memo. 1997-168; Ellis v. Commissioner, T.C. Memo. 1984-50; sec. 1.183-2(b)(1), Income Tax Regs.

Mr. Sears admitted that he "had some pretty weak business practices". Indeed, there is no indication he prepared a budget or instituted an accounting system to track revenue and expenses. Nor does it appear that he maintained a separate bank account or credit card for the activity.[8] Mr. Sears also reflected poor recordkeeping practices by failing to timely file at least two Forms 941, including one that was filed more than 2 years late, and by deducting employee benefit programs expense for costs paid before Ms. McCabe was covered by the reimbursement plan. Furthermore, his failure to reimburse Ms. McCabe for medical expenses indicates he viewed his family's funds and those of the activity as interchangeable.

Mr. Sears did apply for a business license from the City of Oroville under the name "American Tax Savers" and registered the Internet domain name "americantaxsavers.com", although he never established an Internet Web site for the activity. Mr. Sears also had a written business plan. However, the business plan consisted of a 25-page, preprinted package from RTP and a 1-page document titled "Explanation of profit potential" signed by Mr.

---

[8] Petitioners maintained at least two credit cards, including a "Quicken Visa Business Card" in both of their names. However, it is not clear from either the account statements or the remainder of the record whether either credit card was used exclusively for the activity.

Sears.  The RTP package does not discuss the size of the market in Oroville, the median income level of its inhabitants, or any other information specific to Mr. Sears's circumstances. Instead, it contains vague statements such as "Our [RTP] marketing strategy is to aggressively promote the Tax Relief System, our products, and our overall business opportunity on a nationwide basis".

The 1-page document signed by Mr. Sears is equally devoid of meaningful content.  It states that Mr. Sears intends to make 18 sales per month, eventually creating a downline distribution network of 3,000 people and "residual monthly income in excess of $9,000.00".  It does not discuss the segments of the market he intends to target, the types or amounts of expenses he expects to incur, or how he will overcome the time constraints imposed by his full-time job.  In sum, any positive inference we might draw from the written business plan is outweighed by the absence of a plausible strategy for earning a profit.

Finally, there is no indication that Mr. Sears attempted changes to improve the activity's profitability.  Mr. Sears testified that he performed a break-even analysis, concluding that he would need "a substantial number" of downline distributors to break even.  Nevertheless, it does not appear that he tried to reduce his expenses or develop new recruiting methods.  This factor does not support petitioners' claim of a profit objective.  See sec. 1.183-2(b)(1), Income Tax Regs.

## 2. The Expertise of the Taxpayer or His Advisers

Preparation for an activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein, may indicate a profit objective. Engdahl v. Commissioner, supra at 668; sec. 1.183-2(b)(2), Income Tax Regs. Efforts to gain experience and a willingness to follow expert advice may also indicate a profit objective. Dworshak v. Commissioner, T.C. Memo. 2004-249; Lundquist v. Commissioner, T.C. Memo. 1999-83, affd. 211 F.3d 600 (11th Cir. 2000).

Petitioners attended numerous RTP seminars and conventions. Mr. Sears testified that attendees sometimes discussed revenue rulings or other aspects of the tax law, but that "conventions in network marketing are more for training in doing the business" and to help "build enthusiasm" for the activity. Mr. Sears did not explain what he meant by "training in doing the business". Although petitioners may have gained expertise relevant to the activity from the RTP-sponsored events they attended, the substance of the seminars and conventions is unclear. Without more information, this factor neither supports nor undercuts the

claim that petitioners entered into the activity with a profit objective.  See sec. 1.183-2(b)(2), Income Tax Regs.

3. <u>The Time and Effort Expended by the Taxpayer in Carrying On the Activity</u>

The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity may indicate an objective to derive a profit, particularly if the activity does not have substantial personal or recreational aspects.  The taxpayer's withdrawal from another occupation to devote most of his energies to the activity may also be evidence that the activity is engaged in for profit.  Sec. 1.183-2(b)(3), Income Tax Regs.

Mr. Sears maintained a separate full-time job in 2000 but "set up a pretty regular schedule" for his recruiting efforts, often meeting with potential recruits before he went to work.  We have found that maintaining a full-time job in addition to conducting a purported business activity can be "a positive factor reflecting * * * [the taxpayer's] motivation."  <u>Dickson v. Commissioner</u>, T.C. Memo. 1986-182.  Mr. Sears's recruiting efforts, however, often involved dining out or meeting "an old family friend" to discuss RTP.  Because of the substantial recreational aspects of the activity, this factor is neutral.  See sec. 1.183-2(b)(3), Income Tax Regs.

4. <u>The Success of the Taxpayer in Carrying On Other Similar or Dissimilar Activities</u>

The fact that the taxpayer has engaged in similar activities in the past and converted them to profitable enterprises may indicate that he engaged in the present activity for profit. Sec. 1.183-2(b)(5), Income Tax Regs. The taxpayer's success in other business activities may also indicate a profit objective. <u>Hoyle v. Commissioner</u>, T.C. Memo. 1994-592.

Petitioners testified they had experience with other network marketing businesses. The record contains little information about any of these activities. Mr. Sears did describe a network marketing activity involving "Cell Tech," which he said sold digestive aids and various natural supplements. This may be the activity described in a 1999 Schedule C as "Sales - Nutritional Products." In any event, the Schedule C reported a $4,691 loss and thus does not indicate success in a similar or dissimilar activity. Because there is no indication that any of petitioners' other activities were profitable, this factor is neutral. See sec. 1.183-2(b)(5), Income Tax Regs.

5. <u>The Taxpayer's History of Income or Losses With Respect to the Activity</u>

A series of losses during the initial or startup stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. Petitioners began the RTP activity in 1999, reporting a loss of $8,372. In 2000, they reported a loss of $14,751.

Because these losses occurred during the initial or startup stage of the activity, however, this factor is neutral.  See id.

6.  The Financial Status of the Taxpayer

A profit objective may be indicated where the taxpayer does not have substantial income or capital from sources other than the activity.  Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit, especially if there are personal or recreational elements involved.  Sec. 1.183-2(b)(8), Income Tax Regs.

Petitioners' reported gross income of $47,959 in 2000 is not insignificant.  Given that personal and recreational elements were involved in the RTP activity, and that the RTP system was geared towards generating income tax deductions, this factor does not support a profit objective.  See id.

7.  Elements of Personal Pleasure or Recreation

The presence of personal motives in carrying on an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved.  Sec. 1.183-2(b)(9), Income Tax Regs.

Petitioners testified that they hoped to make a profit from the RTP activity.  As discussed above, however, the activity involved personal and recreational elements, such as dining out and meeting friends.  This factor does not support a profit

objective.  See id.

None of the above factors supports petitioners' claim of an economic profit objective independent of tax savings.  See Surloff v. Commissioner, 81 T.C. at 233.  We therefore conclude that petitioners did not enter into the RTP activity with a profit objective.  Given our conclusion, we need not decide whether petitioners substantiated their claimed Schedule C deductions.[9]  We also need not address section 183(b)(2) because respondent allowed expenses related to the activity to the extent of the activity's gross income.  See sec. 183(a) and (b)(2).

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered under Rule 155.

---

[9]  Under sec. 213(a), medical expenses paid and not compensated for by insurance are deductible to the extent they exceed 7.5 percent of adjusted gross income (AGI).  Even if petitioners could substantiate their claimed medical expenses, such expenses would not exceed the AGI threshold.